IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JORGE ROBLES JAUREGUI,

     Plaintiff,                    No.  2:  10-cv-2283 JAM JFM (PC)

     vs.

MATTHEW CATE, et al.,

     Defendants.           <u>ORDER AND FINDINGS AND</u>

                                       <u>RECOMMENDATIONS</u>

_____/

I.  INTRODUCTION

     Plaintiff is a state prisoner proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff has alleged that defendant Hsieh was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Presently before the court is Hsieh's motion for summary judgment.  For the following reasons, Hsieh's motion for summary judgment should be granted.

II.  UNDISPUTED FACTS

     All facts are undisputed unless otherwise noted.  Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) at California State Prison - Solano ("CSP - Solano").  (Defendant Hsieh's Statement of Undisputed Facts

1

("DUF") ¶ 1.) Defendant Hsieh is a licensed physician and surgeon at CSP - Solano. (DUF ¶ 2.) As a physician and surgeon at CSP - Solano, Hsieh's responsibilities include treating inmates at clinics and interviewing inmates at the first level of review for medical appeals. (DUF ¶ 3.) In August of 2000, plaintiff was diagnosed with acute appendicitis and received an appendectomy at Doctor's Hospital of Manteca. (DUF ¶ 4.) Surgical clips were used to clamp the mesoappendix and are currently inside plaintiff's abdominal cavity. (DUF ¶ 5.) It is standard practice to use surgical clips after various surgeries, including appendectomies. (DUF ¶ 6.) Surgical clips are routinely left in the body to close blood vessels after an organ is removed. (DUF ¶ 7.) Generally, surgical clips do not cause any pain or pose a risk to a patient's health. (DUF ¶ 8.)

Plaintiff alleges that he has suffered from chronic pain in his abdomen since the appendectomy in 2000. (DUF ¶ 9.) Plaintiff also asserts that the surgical clips are causing his abdominal pain. (DUF ¶ 10.) Plaintiff has no medical training but believes the pain will stop if the clips are removed. (DUF ¶ 12.)

Medical services are provided for inmates which are based on medical necessity and supported by outcome data as effective medical care. (DUF ¶ 14.) In the absence of available outcome data for a specific case, treatment is based on the judgment of the physician that the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists. (DUF ¶ 15.) Treatment for conditions which might otherwise be excluded may be allowed on a case by case basis. (DUF ¶ 16.)

Hsieh partially granted plaintiff's first level of review on September 19, 2008. (DUF ¶ 18.) Prior to filing the appeal, plaintiff had undergone extensive work-up at CSP - Solano regarding his abdominal pain. (DUF ¶ 19.) On March 24, 2008, plaintiff underwent an abdomen ultrasound. (DUF ¶ 20.) The ultrasound revealed fatty infiltration of the liver, but no evidence of upper abdominal pathology. (DUF ¶ 21.)

2

On June 18, 2008, plaintiff receive an x-ray of the abdomen. (DUF ¶ 22.) The x-ray revealed the existence of the surgical clips, but there was no evidence of obstruction in the abdomen. (DUF ¶ 23.) On July 15, 2008, plaintiff received a Fluro Barium enema at Queen of the Valley Hospital (QVH). (DUF ¶ 24.) The results showed a negative barium enema scan. (DUF ¶ 25.)

On July 31, 2008, plaintiff returned to QVH for a CT scan of the pelvis. (DUF ¶ 26.) The study revealed some muscosal or wall thickening in the cecum and ascending colon. (DUF ¶ 27.) A colonoscopy was recommended. (DUF ¶ 28.)

In November 2008, plaintiff received a radionuclide hepatobillary ininodiacetic acid (HIDA) scan of his gallbladder. (DUF ¶ 29.) The study was normal, but revealed the gallbladder ejection fraction was depressed and the etiology for that was uncertain. (DUF ¶ 30.) Plaintiff also received x-rays of his right rib cage and chest, which revealed no abnormalities in the ribs and only mild hyperinflation in the chest suggesting chronic obstructive pulmonary disease (COPD), but no acute process was identified. (DUF ¶ 31.)

On December 31, 2008, plaintiff returned to QVH for a colonoscopy. (DUF ¶ 32.) The exam revealed minimal inflammation of the ileocecal valve, which was biopsied. (DUF ¶ 33.) The biopsy revealed no abnormalities. (DUF ¶ 34.) The colonoscopy results were unremarkable. (DUF ¶ 35.)

On February 19, 2009, plaintiff returned to QVH for an upper endoscopy with biopsy to rule out peptic ulcer disease. (DUF ¶ 36.) The exam revealed that plaintiff had some gastritis and duodenitis. (DUF ¶ 37.) A biopsy was positive for H. pylori. (DUF ¶ 38.) Plaintiff was treated for the H. pylori. (DUF ¶ 39.)

Plaintiff alleges he became aware of the surgical clips when he saw a radiology report in February 2009. (DUF ¶ 40.) The first doctor plaintiff told about the surgical clips was Dr. Perez at CSP - Solano on June 15, 2009. (DUF ¶ 41.) Plaintiff was examined by Dr. Perez on June 15, 2009. (DUF ¶ 42.) Plaintiff's vitals were stable and his abdomen was soft. (DUF ¶

3

43.) Dr. Perez wrote that plaintiff exaggerated his response to gentle palpation of his abdomen and that he suspected malingering behavior from plaintiff. (DUF ¶¶ 44 & 45.)

On August 4, 2009, plaintiff submitted an inmate/parolee appeal form which was assigned log number SOL-24-09-12870. (DUF ¶¶ 46-47.) In this appeal, plaintiff alleged that he was receiving inadequate medical treatment because multiple doctors had examined him and multiple tests had been conducted, yet the etiology of his abdominal pain was unknown. (DUF ¶ 48.) Plaintiff alleged that the surgical clips caused him severe pain and needed to be removed. (DUF ¶ 49.) He further alleged that his doctors knew about the surgical clips in his stomach, but did nothing to remove them. (DUF ¶ 50.) He requested to be seen by a medical doctor, be medically unassigned from working, to see a consultant regarding the removal of the clips, for a list of his treating doctors since 2000, and for a formal investigation of the doctors who had treated him since 2000. (DUF ¶ 51.)

On August 13, 2009, plaintiff saw Dr. Collinsworth regarding his abdominal pain. (DUF ¶ 52.) Plaintiff had undergone multiple abdominal studies, but the etiology of the pain was unknown. (DUF ¶ 53.) Plaintiff requested a pain injection or to be sent to the emergency room. (DUF ¶ 54.) Dr. Collinsworth noted in his progress report that plaintiff threatened to sue him if Dr. Collinsworth did not send him to a hospital. (DUF ¶ 55.) Dr. Collinsworth wrote an order for stool sample analysis and renewed an order for Tramadol. (DUF ¶ 56.) Dr. Collinsworth also wrote a referral to send plaintiff to a GI specialist at QVH. (DUF ¶ 57.)

Hsieh examined plaintiff on August 19, 2009 for the first time. (DUF ¶ 58.) Plaintiff alleged that he was suffering from severe abdominal pain because of surgical clips left in his abdomen. (DUF ¶ 59.) Plaintiff's vitals were all within normal limits and his abdomen was soft. (DUF ¶ 60.) Hsieh noted that plaintiff did not show any signs of guarding or rebounding when he pressed on his abdomen which was inconsistent with plaintiff's subjective complaint. (DUF ¶ 61.) Hsieh reviewed plaintiff's medical records and noticed that he had undergone an extensive work-up regarding his abdominal pain. (DUF ¶ 62.) Hsieh concluded

4

that plaintiff's abdominal exam was normal and that plaintiff's pain could be psychological. (DUF ¶ 63.) Hsieh wrote orders for lab work, including stool analysis, urinalysis, and lipase level analysis, which checks for pancreatitis. (DUF ¶ 64.) Hsieh also wrote an order for an abdominal x-ray and added fiber tabs to plaintiff's diet. (DUF ¶ 65.)

On August 20, 2009, Hsieh interviewed plaintiff at the first level review of his appeal. (DUF ¶ 66.) Hsieh reviewed plaintiff's 602 and his medical records. (DUF ¶ 67.) Hsieh concluded that plaintiff's request to a see a medical doctor would be granted because he had recently been seen on June 15th, August 13th and August 19th by three different doctors and each doctor concluded his exam was normal. (DUF ¶ 68.) Hsieh also concluded that plaintiff's request to see a specialist would be granted because plaintiff had a pending consultation with a GI specialist to determine whether or not the surgical clips needed to be removed. (DUF ¶ 69.) In sum, Hsieh concluded that plaintiff was receiving adequate medical care. (DUF ¶ 70.)

On September 19, 2009, plaintiff's appeal was partially granted by Hsieh at the first level of review. (DUF ¶ 71.) The appeal was partially granted because plaintiff had recently been seen by three different doctors regarding his concerns about the surgical clips and a consultation with a GI specialist to determine whether or not the surgical clips needed to be removed was pending. (DUF ¶ 72.) Plaintiff was apprised of the reasons his appeal was partially granted. (DUF ¶ 73.) Plaintiff understood the partial grant of his appeal to be a denial, so he appealed to the second level of review. (DUF ¶ 74.) After his appeal was partially granted at the first level of review, his work-up regarding his abdominal pain continued to be negative. (DUF ¶ 75.)

In September 2009, the Chief Medical Officer (CMO), Dr. Traquina, reviewed plaintiff's most recent abdominal x-ray. (DUF ¶ 76.) Dr. Traquina is a surgeon and determined that the surgical clips inside plaintiff's abdominal cavity were of normal size. (DUF ¶ 77.)

On September 24, 2009, plaintiff was seen by Dr. Vaziri, a GI specialist at QVH. (DUF ¶ 78.) Dr. Vaziri noted that plaintiff was fixated on the belief that the surgical clips were

5

causing him pain and requested a surgical evaluation. (DUF ¶ 79.) Dr. Vaziri recommended that plaintiff consult with a surgeon and that he undergo a small bowel follow through procedure. (DUF ¶ 80.)

On November 2, 2009, plaintiff's appeal was partially granted at the second level of review. (DUF ¶ 81.) The Chief Physician and Surgeon at the time, Dr. Rallos, reviewed plaintiff's medical records and determined that plaintiff's work up had been extensive and that all diagnostic test results had been normal. (DUF ¶ 82.) Dr. Rallos explained that surgical clips are used to close surgical wounds and that this particular practice has prevailed because over the years it has been proven to be safe and does not cause the pain plaintiff alleged. (DUF ¶ 83.) Dr. Rallos further noted that removal of the clips was unnecessary and could cause more harm then good. (DUF ¶ 84.)

On November 6, 2009, plaintiff had a surgical consultation with Dr. Mbanugo of Doctor's Medical Center in San Pablo. (DUF ¶ 85.) There was no evidence of infection in plaintiff's abdomen. (DUF ¶ 86.) Dr. Mbanugo noted that the pain in plaintiff's abdomen could be from scar tissue from the appendectomy or from radiculopathy. (DUF ¶ 88.) Dr. Mbanugo recommended that plaintiff consult with a neurologist for a neurological exam to rule out radioculopathy. (DUF ¶ 89.)

On January 12, 2010, Hsieh saw plaintiff for a follow up appointment. (DUF ¶ 90.) Prior to the appointment, Hseih and nurse Kormman observed plaintiff ambulating without difficulty even though he claimed to be in severe pain when he saw Hsieh in the examination room. (DUF ¶ 91.) During the exam, plaintiff did not exhibit any rebound or guarding when Hsieh pressed on his abdomen. (DUF ¶ 92.) Plaintiff's abdomen was soft and there were normal active bowel sounds. (DUF ¶ 93.) Hsieh determined that his abdominal exam was normal. (DUF ¶ 94.)

On February 8, 2010, plaintiff's appeal was denied at the director's level of review because there was no compelling evidence warranting intervention at the director's level.

6

(DUF ¶ 96.)

Plaintiff's studies and lab work have been normal. (DUF ¶ 97.) Plaintiff has had multiple urinalysis tests that were negative for infection or blood, multiple guaiac stool studies (method to detect blood in stool) that were negative for blood, a normal liver function test, a normal bilirubin level and normal lipase levels. (DUF ¶ 98.)

Plaintiff continued to consult with Dr. Vaziri between August 2010 and October 2010. (DUF ¶ 99.) Dr. Vaziri opined that plaintiff's pain could be scar tissue, Irritable Bowel Syndrome (IBS), or drug seeking behavior. (DUF ¶ 100).

An enhanced contrast CT scan of the abdomen in November 2010 revealed a normal liver, gallbladder, bile ducts, spleen, pancreas, kidneys and adrenal glands. (DUF ¶ 101.) In addition, plaintiff's weigh has remained stable. (DUF ¶ 102.)

### III.  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

7

which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See FED. R. CIV. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

8

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See FED. R. CIV. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On May 3, 2011, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Plaintiff was once again informed of the requirements to oppose a motion pursuant to Rule 56 on August 2, 2012 by defendant Hsieh.

## IV.  REQUEST FOR JUDICIAL NOTICE

In his reply brief, Hsieh requests that the court take judicial notice of California Medical Board information regarding William Moalem, whose declaration is attached to plaintiff's opposition to Hsieh's motion for summary judgment.  Judicial notice is governed by Federal Rule of Evidence 201, which governs only judicial notice of adjudicative facts.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201.  In other words, "the fact must be one that only an unreasonable person would insist on disputing."  United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).  While federal

courts may notice judicial records, the content of such records and deposition testimony are not established facts that can be judicially notice. See In re Oracle Corp. Sec. Litig., 627 F.3d 376, 386 n. 1 (9th Cir. 2010); Newman v. San Joaquin Delta Community College Dist., 272 F.R.D. 505, 516 (E.D. Cal. 2011).

The records submitted by Hsieh from the California Medical Board are of the type for which judicial notice is proper. Specifically, the attachment indicates that Moalem's license to practice as a doctor of podiatric medicine was revoked on August 26, 2002. Accordingly, Hsieh's request for judicial notice will be granted.

## V. DELIBERATE INDIFFERENCE STANDARD

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97 (1976); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." Jett, 439 F.3d at 1096. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett, 439 F.3d at 1096; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds by, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official is "deliberately indifferent" if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, the second prong is satisfied by the plaintiff showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096.

Prison officials demonstrate "deliberate indifference" when they are aware of the patient's condition but "deny, delay or intentionally interfere with medical treatment." Jett, 439

F.3d at 1096. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Under this standard, the prison official must not only "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person 'must also draw the inference.'" Farmer, 511 U.S. at 837; Toguchi, 390 at 1057. "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Toguchi, 390 at 1057 (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

In applying the deliberate indifference standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v.. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

## VI. ANALYSIS OF HSIEH'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asserts that Hsieh knew that plaintiff was being subjected to unnecessary pain but did not respond reasonably. More specifically, he asserts that Hsieh failed to attend to

11

1  the issue of the surgical clips which were causing plaintiff pain in his abdomen. While plaintiff
2  admits that the doctors agreed that surgical clips do not generally cause pain, he claims that none
3  of the doctors stated that the surgical clips could not be the cause of plaintiff's pain.

4  Hsieh asserts that he is entitled to summary judgment because the evidence shows
5  that plaintiff was receiving adequate medical care regarding his abdominal pain. Furthermore,
6  Hseih states that no doctor ever told plaintiff that the surgical clips were the cause of his pain.
7  Instead, Hsieh notes that plaintiff has been seen by numerous doctors and specialists and has
8  undergone numerous tests, but that the etiology of his abdominal pain cannot be determined.
9  According to Hsieh, his actions/inaction do not amount to deliberate indifference to plaintiff's
10 serious medical needs.

11 Summary judgment should be granted in favor of Hsieh. Plaintiff has failed to
12 show a material issue of fact with respect to showing that Hseih made a purposeful act or failed
13 to respond to petitioner's pain or serious medical needs. Indeed, the undisputed facts stated
14 above indicate that plaintiff was seen by numerous doctors and underwent various tests to
15 determine the cause of his abdominal pain. No doctor stated that the surgical clips were the
16 cause of his abdominal pain. Indeed, certain doctors determined that removing the surgical clips
17 might do more harm than good. At most, plaintiff has shown only a mere disagreement as to
18 how best to treat his abdominal pain. This is insufficient to create a material issue of fact as to
19 his deliberate indifference claim against Hsieh. See Sanchez, 891 F.2d at 242 (prisoner's mere
20 disagreement with diagnosis or treatment does not support a claim of deliberate indifference).

21 In opposing Hsieh's motion for summary judgment, plaintiff has attached a
22 declaration of inmate William Moalem. Moalem states in his declaration that he imagines that a
23 simple minimally invasive removal of the foreign object in his abdomen would remove the pain.
24 (See Pl.'s Opp's Mot. Summ. J. Ex. A.) As previously indicated, Moalem's medical license was
25 revoked in 2002.

26 Moalem's declaration does not discuss Hseih's treatment of plaintiff or lack

12

1 thereof. As noted above, other doctors (like Dr. Rallos) expressed their opinion that removal of
2 the surgical clips might do more harm to plaintiff than good. Thus, even if the court were to
3 consider Moalem's declaration as a proper expert opinion, it would only amount to a mere
4 disagreement of medical opinion which is insufficient to establish deliberate indifference. See
5 Sanchez, 891 F.2d at 242. Accordingly, the declaration does not create a material issue of fact as
6 to whether Hseih was deliberately indifferent to plaintiff's serious medical needs.

Finally, plaintiff's own disagreement with Hsieh's medical opinion is also insufficient to raise a material issue of fact with respect to plaintiff's deliberate indifference claim against Hsieh. See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim.") (citation omitted).

Because the court concludes that plaintiff fails to raise a triable issue of fact on his claims that his constitutional rights were violated as to defendant Hseih, the court need not and will not reach the issue of whether Hsieh is entitled to qualified immunity.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that defendant Hsieh's request for judicial notice as stated in his reply to the motion for summary judgment is GRANTED.

Furthermore, IT IS HEREBY RECOMMENDED that defendant Hsieh's motion for summary judgment (Dkt. No. 55.) be GRANTED.

/////
/////
/////
/////
/////
/////
/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 20, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

14
jaur2283.hseih.sj