1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JORGE ROBLES JAUREGUI,

11          Plaintiff,               No.  2:  10-cv-2283 JAM JFM (PC)

12      vs.

13   MATTHEW CATE, et al.,

14          Defendants.         ORDER AND FINDINGS AND

15                               RECOMMENDATIONS

16   _____/

17                    I.  INTRODUCTION

18          Plaintiff is a state prisoner proceeding *pro se* with a civil rights complaint

19   pursuant to 42 U.S.C. § 1983.  Plaintiff has alleged that defendant Hsieh was deliberately

20   indifferent to his serious medical needs in violation of the Eighth Amendment.  Presently before

21   the court is Hsieh's motion for summary judgment.  For the following reasons, Hsieh's motion

22   for summary judgment should be granted.

23                  II.  UNDISPUTED FACTS

24          All facts are undisputed unless otherwise noted.  Plaintiff is a prisoner in the

25   custody of the California Department of Corrections and Rehabilitation (CDCR) at California

26   State Prison - Solano ("CSP - Solano").  (Defendant Hsieh's Statement of Undisputed Facts

("DUF") ¶ 1.)  Defendant Hsieh is a licensed physician and surgeon at CSP - Solano.  (DUF ¶ 2.)
As a physician and surgeon at CSP - Solano, Hsieh's responsibilities include treating inmates at
clinics and interviewing inmates at the first level of review for medical appeals.  (DUF ¶ 3.)  In
August of 2000, plaintiff was diagnosed with acute appendicitis and received an appendectomy
at Doctor's Hospital of Manteca.  (DUF ¶ 4.)  Surgical clips were used to clamp the
mesoappendix and are currently inside plaintiff's abdominal cavity.  (DUF ¶ 5.)  It is standard
practice to use surgical clips after various surgeries, including appendectomies.  (DUF ¶ 6.)
Surgical clips are routinely left in the body to close blood vessels after an organ is removed.
(DUF ¶ 7.)  Generally, surgical clips do not cause any pain or pose a risk to a patient's health.
(DUF ¶ 8.)

Plaintiff alleges that he has suffered from chronic pain in his abdomen since the
appendectomy in 2000.  (DUF ¶ 9.)  Plaintiff also asserts that the surgical clips are causing his
abdominal pain.  (DUF ¶ 10.)  Plaintiff has no medical training but believes the pain will stop if
the clips are removed.  (DUF ¶ 12.)

Medical services are provided for inmates which are based on medical necessity
and supported by outcome data as effective medical care.  (DUF ¶ 14.)  In the absence of
available outcome data for a specific case, treatment is based on the judgment of the physician
that the treatment is considered effective for the purpose intended and is supported by diagnostic
information and consultations with appropriate specialists.  (DUF ¶ 15.)  Treatment for
conditions which might otherwise be excluded may be allowed on a case by case basis.  (DUF ¶
16.)

Hsieh partially granted plaintiff's first level of review on September 19, 2008.
(DUF ¶ 18.)  Prior to filing the appeal, plaintiff had undergone extensive work-up at CSP -
Solano regarding his abdominal pain.  (DUF ¶ 19.)  On March 24, 2008, plaintiff underwent an
abdomen ultrasound.  (DUF ¶ 20.)  The ultrasound revealed fatty infiltration of the liver, but no
evidence of upper abdominal pathology.  (DUF ¶ 21.)

On June 18, 2008, plaintiff receive an x-ray of the abdomen.  (DUF ¶ 22.)  The x-ray revealed the existence of the surgical clips, but there was no evidence of obstruction in the abdomen.  (DUF ¶ 23.)  On July 15, 2008, plaintiff received a Fluro Barium enema at Queen of the Valley Hospital (QVH).  (DUF ¶ 24.)  The results showed a negative barium enema scan.  (DUF ¶ 25.)

On July 31, 2008, plaintiff returned to QVH for a CT scan of the pelvis.  (DUF ¶ 26.)  The study revealed some muscosal or wall thickening in the cecum and ascending colon.  (DUF ¶ 27.)  A colonoscopy was recommended.  (DUF ¶ 28.)

In November 2008, plaintiff received a radionuclide hepatobillary ininodiacetic acid (HIDA) scan of his gallbladder.  (DUF ¶ 29.)  The study was normal, but revealed the gallbladder ejection fraction was depressed and the etiology for that was uncertain.  (DUF ¶ 30.)  Plaintiff also received x-rays of his right rib cage and chest, which revealed no abnormalities in the ribs and only mild hyperinflation in the chest suggesting chronic obstructive pulmonary disease (COPD), but no acute process was identified.  (DUF ¶ 31.)

On December 31, 2008, plaintiff returned to QVH for a colonoscopy.  (DUF ¶ 32.)  The exam revealed minimal inflammation of the ileocecal valve, which was biopsied.  (DUF ¶ 33.)  The biopsy revealed no abnormalities.  (DUF ¶ 34.)  The colonoscopy results were unremarkable.  (DUF ¶ 35.)

On February 19, 2009, plaintiff returned to QVH for an upper endoscopy with biopsy to rule out peptic ulcer disease.  (DUF ¶ 36.)  The exam revealed that plaintiff had some gastritis and duodenitis.  (DUF ¶ 37.)  A biopsy was positive for H. pylori.  (DUF ¶ 38.)  Plaintiff was treated for the H. pylori.  (DUF ¶ 39.)

Plaintiff alleges he became aware of the surgical clips when he saw a radiology report in February 2009.  (DUF ¶ 40.)  The first doctor plaintiff told about the surgical clips was Dr. Perez at CSP - Solano on June 15, 2009.  (DUF ¶ 41.)  Plaintiff was examined by Dr. Perez on June 15, 2009.  (DUF ¶ 42.)  Plaintiff's vitals were stable and his abdomen was soft.  (DUF ¶

43.)  Dr. Perez wrote that plaintiff exaggerated his response to gentle palpation of his abdomen and that he suspected malingering behavior from plaintiff.  (DUF ¶¶ 44 & 45.)

On August 4, 2009, plaintiff submitted an inmate/parolee appeal form which was assigned log number SOL-24-09-12870.  (DUF ¶¶ 46-47.)  In this appeal, plaintiff alleged that he was receiving inadequate medical treatment because multiple doctors had examined him and multiple tests had been conducted, yet the etiology of his abdominal pain was unknown.  (DUF ¶ 48.)  Plaintiff alleged that the surgical clips caused him severe pain and needed to be removed.  (DUF ¶ 49.)  He further alleged that his doctors knew about the surgical clips in his stomach, but did nothing to remove them.  (DUF ¶ 50.)  He requested to be seen by a medical doctor, be medically unassigned from working, to see a consultant regarding the removal of the clips, for a list of his treating doctors since 2000, and for a formal investigation of the doctors who had treated him since 2000.  (DUF ¶ 51.)

On August 13, 2009, plaintiff saw Dr. Collinsworth regarding his abdominal pain.  (DUF ¶ 52.)  Plaintiff had undergone multiple abdominal studies, but the etiology of the pain was unknown.  (DUF ¶ 53.)  Plaintiff requested a pain injection or to be sent to the emergency room.  (DUF ¶ 54.)  Dr. Collinsworth noted in his progress report that plaintiff threatened to sue him if Dr. Collinsworth did not send him to a hospital.  (DUF ¶ 55.)  Dr. Collinsworth wrote an order for stool sample analysis and renewed an order for Tramadol.  (DUF ¶ 56.)  Dr. Collinsworth also wrote a referral to send plaintiff to a GI specialist at QVH.  (DUF ¶ 57.)

Hsieh examined plaintiff on August 19, 2009 for the first time.  (DUF ¶ 58.)  Plaintiff alleged that he was suffering from severe abdominal pain because of surgical clips left in his abdomen.  (DUF ¶ 59.)  Plaintiff's vitals were all within normal limits and his abdomen was soft.  (DUF ¶ 60.)  Hsieh noted that plaintiff did not show any signs of guarding or rebounding when he pressed on his abdomen which was inconsistent with plaintiff's subjective complaint.  (DUF ¶ 61.)  Hsieh reviewed plaintiff's medical records and noticed that he had undergone an extensive work-up regarding his abdominal pain.  (DUF ¶ 62.)  Hsieh concluded

4

1  that plaintiff's abdominal exam was normal and that plaintiff's pain could be psychological.

2  (DUF ¶ 63.)  Hsieh wrote orders for lab work, including stool analysis, urinalysis, and lipase

3  level analysis, which checks for pancreatitis.  (DUF ¶ 64.)  Hsieh also wrote an order for an

4  abdominal x-ray and added fiber tabs to plaintiff's diet.  (DUF ¶ 65.)

5          On August 20, 2009, Hsieh interviewed plaintiff at the first level review of his

6  appeal.  (DUF ¶ 66.)  Hsieh reviewed plaintiff's 602 and his medical records.  (DUF ¶ 67.)

7  Hsieh concluded that plaintiff's request to a see a medical doctor would be granted because he

8  had recently been seen on June 15th, August 13th and August 19th by three different doctors and

9  each doctor concluded his exam was normal.  (DUF ¶ 68.)  Hsieh also concluded that plaintiff's

10 request to see a specialist would be granted because plaintiff had a pending consultation with a

11 GI specialist to determine whether or not the surgical clips needed to be removed.  (DUF ¶ 69.)

12 In sum, Hsieh concluded that plaintiff was receiving adequate medical care.  (DUF ¶ 70.)

13         On September 19, 2009, plaintiff's appeal was partially granted by Hsieh at the

14 first level of review.  (DUF ¶ 71.)  The appeal was partially granted because plaintiff had

15 recently been seen by three different doctors regarding his concerns about the surgical clips and

16 a consultation with a GI specialist to determine whether or not the surgical clips needed to be

17 removed was pending.  (DUF ¶ 72.)  Plaintiff was apprised of the reasons his appeal was

18 partially granted.  (DUF ¶ 73.)  Plaintiff understood the partial grant of his appeal to be a denial,

19 so he appealed to the second level of review.  (DUF ¶ 74.)  After his appeal was partially granted

20 at the first level of review, his work-up regarding his abdominal pain continued to be negative.

21 (DUF ¶ 75.)

22         In September 2009, the Chief Medical Officer (CMO), Dr. Traquina, reviewed

23 plaintiff's most recent abdominal x-ray.  (DUF ¶ 76.)  Dr. Traquina is a surgeon and determined

24 that the surgical clips inside plaintiff's abdominal cavity were of normal size.  (DUF ¶ 77.)

25         On September 24, 2009, plaintiff was seen by Dr. Vaziri, a GI specialist at QVH.

26 (DUF ¶ 78.)  Dr. Vaziri noted that plaintiff was fixated on the belief that the surgical clips were

1   causing him pain and requested a surgical evaluation.  (DUF ¶ 79.)  Dr. Vaziri recommended

2   that plaintiff consult with a surgeon and that he undergo a small bowel follow through procedure.

3   (DUF ¶ 80.)

4          On November 2, 2009, plaintiff's appeal was partially granted at the second level

5   of review.  (DUF ¶ 81.)  The Chief Physician and Surgeon at the time, Dr. Rallos, reviewed

6   plaintiff's medical records and determined that plaintiff's work up had been extensive and that

7   all diagnostic test results had been normal.  (DUF ¶ 82.)  Dr. Rallos explained that surgical clips

8   are used to close surgical wounds and that this particular practice has prevailed because over the

9   years it has been proven to be safe and does not cause the pain plaintiff alleged.  (DUF ¶ 83.)

10  Dr. Rallos further noted that removal of the clips was unnecessary and could cause more harm

11  then good.  (DUF ¶ 84.)

12         On November 6, 2009, plaintiff had a surgical consultation with Dr. Mbanugo of

13  Doctor's Medical Center in San Pablo.  (DUF ¶ 85.)  There was no evidence of infection in

14  plaintiff's abdomen.  (DUF ¶ 86.)  Dr. Mbanugo noted that the pain in plaintiff's abdomen could

15  be from scar tissue from the appendectomy or from radiculopathy.  (DUF ¶ 88.)  Dr. Mbanugo

16  recommended that plaintiff consult with a neurologist for a neurological exam to rule out

17  radioculopathy.  (DUF ¶ 89.)

18         On January 12, 2010, Hsieh saw plaintiff for a follow up appointment.  (DUF ¶

19  90.)  Prior to the appointment, Hseih and nurse Kormman observed plaintiff ambulating without

20  difficulty even though he claimed to be in severe pain when he saw Hsieh in the examination

21  room.  (DUF ¶ 91.)  During the exam, plaintiff did not exhibit any rebound or guarding when

22  Hsieh pressed on his abdomen.  (DUF ¶ 92.)  Plaintiff's abdomen was soft and there were normal

23  active bowel sounds.  (DUF ¶ 93.)  Hsieh determined that his abdominal exam was normal.

24  (DUF ¶ 94.)

25         On February 8, 2010, plaintiff's appeal was denied at the director's level of

26  review because there was no compelling evidence warranting intervention at the director's level.

1    (DUF ¶ 96.)

2    　　　　　Plaintiff's studies and lab work have been normal.  (DUF ¶ 97.)  Plaintiff has had

3    multiple urinalysis tests that were negative for infection or blood, multiple guaiac stool studies

4    (method to detect blood in stool) that were negative for blood, a normal liver function test, a

5    normal bilirubin level and normal lipase levels.  (DUF ¶ 98.)

6    　　　　　Plaintiff continued to consult with Dr. Vaziri between August 2010 and October

7    2010.  (DUF ¶ 99.)  Dr. Vaziri opined that plaintiff's pain could be scar tissue, Irritable Bowel

8    Syndrome (IBS), or drug seeking behavior.  (DUF ¶ 100).

9    　　　　　An enhanced contrast CT scan of the abdomen in November 2010 revealed a

10   normal liver, gallbladder, bile ducts, spleen, pancreas, kidneys and adrenal glands.  (DUF ¶ 101.)

11   In addition, plaintiff's weigh has remained stable.  (DUF ¶ 102.)

12   　　　　　　　III.  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

13   　　　　　Summary judgment is appropriate when it is demonstrated that there exists "no

14   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

15   matter of law."  FED. R. CIV. P. 56(c).

16   　　　　　Under summary judgment practice, the moving party

17   　　　　　always bears the initial responsibility of informing the district
     　　　　　court of the basis for its motion, and identifying those portions of
18   　　　　　"the pleadings, depositions, answers to interrogatories, and
     　　　　　admissions on file, together with the affidavits, if any," which it
19   　　　　　believes demonstrate the absence of a genuine issue of material
     　　　　　fact.
20

21   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  "[W]here the

22   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

23   judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

24   answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be

25   entered, after adequate time for discovery and upon motion, against a party who fails to make a

26   showing sufficient to establish the existence of an element essential to that party's case, and on

7

1   which that party will bear the burden of proof at trial. <u>See</u> <u>id.</u> at 322.  "[A] complete failure of

2   proof concerning an essential element of the nonmoving party's case necessarily renders all

3   other facts immaterial." <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so

4   long as whatever is before the district court demonstrates that the standard for entry of summary

5   judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

6        If the moving party meets its initial responsibility, the burden then shifts to the

7   opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u>

8   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

9   establish the existence of this factual dispute, the opposing party may not rely upon the

10  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11  form of affidavits, and/or admissible discovery material, in support of its contention that the

12  dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

13  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

14  of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

15  (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

16  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

17  return a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,

18  1436 (9th Cir. 1987).

19       In the endeavor to establish the existence of a factual dispute, the opposing party

20  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22  versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

23  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24  genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

25  committee's note on 1963 amendments).

26       In resolving the summary judgment motion, the court examines the pleadings,

8

1   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

2   any.  See FED. R. CIV. P. 56(c).  The evidence of the opposing party is to be believed.  See

3   Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

4   before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

5   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

6   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

7   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

8   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

9   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

10  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

11  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

12          On May 3, 2011, the court advised plaintiff of the requirements for opposing a

13  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

14  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

15  Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Plaintiff was once again informed of the requirements

16  to oppose a motion pursuant to Rule 56 on August 2, 2012 by defendant Hsieh.

17                          IV.  REQUEST FOR JUDICIAL NOTICE

18          In his reply brief, Hsieh requests that the court take judicial notice of California

19  Medical Board information regarding William Moalem, whose declaration is attached to

20  plaintiff's opposition to Hsieh's motion for summary judgment.  Judicial notice is governed by

21  Federal Rule of Evidence 201, which governs only judicial notice of adjudicative facts.  "A

22  judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

23  generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

24  ready determination by resort to sources whose accuracy cannot reasonably be questioned."

25  FED. R. EVID. 201.  In other words, "the fact must be one that only an unreasonable person would

26  insist on disputing."  United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).  While federal

1  courts may notice judicial records, the content of such records and deposition testimony are not

2  established facts that can be judicially notice.  See In re Oracle Corp. Sec. Litig., 627 F.3d 376,

3  386 n. 1 (9th Cir. 2010); Newman v. San Joaquin Delta Community College Dist., 272 F.R.D.

4  505, 516 (E.D. Cal. 2011).

5          The records submitted by Hsieh from the California Medical Board are of the type

6  for which judicial notice is proper.  Specifically, the attachment indicates that Moalem's license

7  to practice as a doctor of podiatric medicine was revoked on August 26, 2002.  Accordingly,

8  Hsieh's request for judicial notice will be granted.

9                          V.  DELIBERATE INDIFFERENCE STANDARD

10         Deliberate indifference to serious medical needs violates the Eighth Amendment's

11  proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97 (1976);

12  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  "In the Ninth Circuit, the test for deliberate

13  indifference consists of two parts."  Jett, 439 F.3d at 1096.  First, the plaintiff must show a

14  serious medical need by demonstrating that failure to treat a prisoner's condition could result in

15  further significant injury or the unnecessary and wanton infliction of pain.  Jett, 439 F.3d at

16  1096; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other

17  grounds by, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

18  "Second, the plaintiff must show the defendant's response to the need was deliberately

19  indifferent."  Jett, 439 F.3d at 1096.  A prison official is "deliberately indifferent" if he or she

20  knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing

21  to take reasonable steps to abate it.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In other

22  words, the second prong is satisfied by the plaintiff showing "(a) a purposeful act or failure to

23  respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

24  Jett, 439 F.3d at 1096.

25         Prison officials demonstrate "deliberate indifference" when they are aware of the

26  patient's condition but "deny, delay or intentionally interfere with medical treatment."  Jett, 439

10

1    F.3d at 1096.  "Deliberate indifference is a high legal standard."  <u>Toguchi v. Chung</u>, 391 F.3d

2    1051, 1060 (9th Cir. 2004).  Under this standard, the prison official must not only "be aware of

3    the facts from which the inference could be drawn that a substantial risk of serious harm exists,"

4    but that person 'must also draw the inference.'"  <u>Farmer</u>, 511 U.S. at 837; <u>Toguchi</u>, 390 at 1057.

5    "'If a prison official should have been aware of the risk, but was not, then the official has not

6    violated the Eighth Amendment, no matter how severe the risk.'"  <u>Toguchi</u>, 390 at 1057 (quoting

7    <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "[A]n Eighth

8    Amendment claimant need not show that a prison official acted or failed to act believing that

9    harm actually would befall an inmate; it is enough that the official acted or failed to act despite

10   his knowledge of a substantial risk of serious harm."  <u>Farmer</u>, 511 U.S. at 842.

11             In applying the deliberate indifference standard, the Ninth Circuit has held that

12   before it can be said that a prisoner's civil rights have been abridged, "the indifference to his

13   medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice'

14   will not support this cause of action."  <u>Broughton v.. Cutter Labs.</u>, 622 F.2d 458, 460 (9th Cir.

15   1980) (citing <u>Estelle</u>, 429 U.S. at 105-06).  "[A] complaint that a physician has been negligent in

16   diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

17   under the Eighth Amendment.  Medical malpractice does not become a constitutional violation

18   merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106; <u>see also</u> <u>Anderson v. County</u>

19   <u>of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995); <u>McGuckin</u>, 974 F.2d at 1050.  Even gross

20   negligence is insufficient to establish deliberate indifference to serious medical needs.  <u>See</u>

21   <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement

22   with diagnosis or treatment does not support a claim of deliberate indifference.  <u>See</u> <u>Sanchez v.</u>

23   <u>Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

24             VI.  ANALYSIS OF HSIEH'S MOTION FOR SUMMARY JUDGMENT

25             Plaintiff asserts that Hsieh knew that plaintiff was being subjected to unnecessary

26   pain but did not respond reasonably.  More specifically, he asserts that Hsieh failed to attend to

1   the issue of the surgical clips which were causing plaintiff pain in his abdomen.  While plaintiff

2   admits that the doctors agreed that surgical clips do not generally cause pain, he claims that none

3   of the doctors stated that the surgical clips could not be the cause of plaintiff's pain.

4          Hsieh asserts that he is entitled to summary judgment because the evidence shows

5   that plaintiff was receiving adequate medical care regarding his abdominal pain.  Furthermore,

6   Hseih states that no doctor ever told plaintiff that the surgical clips were the cause of his pain.

7   Instead, Hsieh notes that plaintiff has been seen by numerous doctors and specialists and has

8   undergone numerous tests, but that the etiology of his abdominal pain cannot be determined.

9   According to Hsieh, his actions/inaction do not amount to deliberate indifference to plaintiff's

10  serious medical needs.

11         Summary judgment should be granted in favor of Hsieh.  Plaintiff has failed to

12  show a material issue of fact with respect to showing that Hseih made a purposeful act or failed

13  to respond to petitioner's pain or serious medical needs.  Indeed, the undisputed facts stated

14  above indicate that plaintiff was seen by numerous doctors and underwent various tests to

15  determine the cause of his abdominal pain.  No doctor stated that the surgical clips were the

16  cause of his abdominal pain.  Indeed, certain doctors determined that removing the surgical clips

17  might do more harm than good.  At most, plaintiff has shown only a mere disagreement as to

18  how best to treat his abdominal pain.  This is insufficient to create a material issue of fact as to

19  his deliberate indifference claim against Hsieh.  See Sanchez, 891 F.2d at 242 (prisoner's mere

20  disagreement with diagnosis or treatment does not support a claim of deliberate indifference).

21         In opposing Hsieh's motion for summary judgment, plaintiff has attached a

22  declaration of inmate William Moalem.  Moalem states in his declaration that he imagines that a

23  simple minimally invasive removal of the foreign object in his abdomen would remove the pain.

24  (See Pl.'s Opp's Mot. Summ. J. Ex. A.)  As previously indicated, Moalem's medical license was

25  revoked in 2002.

26         Moalem's declaration does not discuss Hseih's treatment of plaintiff or lack

1  thereof.  As noted above, other doctors (like Dr. Rallos) expressed their opinion that removal of

2  the surgical clips might do more harm to plaintiff than good.  Thus, even if the court were to

3  consider Moalem's declaration as a proper expert opinion, it would only amount to a mere

4  disagreement of medical opinion which is insufficient to establish deliberate indifference.  See

5  Sanchez, 891 F.2d at 242.  Accordingly, the declaration does not create a material issue of fact as

6  to whether Hseih was deliberately indifferent to plaintiff's serious medical needs.

7          Finally, plaintiff's own disagreement with Hsieh's medical opinion is also

8  insufficient to raise a material issue of fact with respect to plaintiff's deliberate indifference

9  claim against Hsieh.  See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A

10  difference of opinion between a prisoner-patient and prison medical authorities regarding

11  treatment does not give rise to a s 1983 claim.") (citation omitted).

12          Because the court concludes that plaintiff fails to raise a triable issue of fact on

13  his claims that his constitutional rights were violated as to defendant Hseih, the court need not

14  and will not reach the issue of whether Hsieh is entitled to qualified immunity.

15                                      VI.  CONCLUSION

16          Accordingly, IT IS HEREBY ORDERED that defendant Hsieh's request for

17  judicial notice as stated in his reply to the motion for summary judgment is GRANTED.

18          Furthermore, IT IS HEREBY RECOMMENDED that defendant Hsieh's motion

19  for summary judgment (Dkt. No. 55.) be GRANTED.

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 20, 2013.

UNITED STATES MAGISTRATE JUDGE

14
jaur2283.hseih.sj

14