1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JORGE ROBLES JAUREGUI,                    No.  2:10-cv-02283 JAM JFM (PC)

12                 Plaintiff,

13        v.                                   FINDINGS & RECOMMENDATIONS

14   MATTHEW CATE, et al.,

15                 Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  This case is proceeding on the second amended complaint, filed January 3,

20   2011.  ECF No. 11.  Plaintiff alleges that defendant Dr. Jerry W. Weiner ("defendant") was

21   deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.[1]

22        Pending before the court is defendant's motion for summary judgment.  Defendant moves

23   for summary judgment on the grounds that he was not deliberately indifferent to plaintiff's

24   _____

25   [1] In his original complaint, plaintiff named Matthew Cate, D.K. Sisto, Doctors Hospital of
     Manteca, Jerry W. Weiner, Alvaro Traquina, T. Rallow, M. Hsieh, and Peter Perez as defendants.
26   ECF No. 1.  Following the court's dismissal of his complaint, plaintiff changed defendants and
     named only Jerry W. Weiner, M. Hsieh and Peter Perez.  ECF No. 11.  On November 8, 2011, the
27   court issued an order granting defendant Peter Perez's motion to dismiss, and dismissing him
     from this action.  ECF No. 46.  On June 27, 2013, the district judge adopted the court's findings
28   and recommendations granting defendant Hsieh's motion for summary judgment.  ECF No. 87.

1

1    medical needs.  As explained below, the court recommends that defendant's motion for summary

2    judgment be granted.

3    II.  Plaintiff's Allegations

4         In his second amended complaint, plaintiff alleges defendant performed an appendectomy,

5    the surgical removal of the appendix, on plaintiff in August 2000, which resulted in surgical clips

6    being left in his body.  ECF No. 11 at 8.  Plaintiff alleges that for eight years following the

7    surgery he experienced pain and discomfort in his abdomen.  Id. at 9.  Plaintiff alleges he was

8    informed by every doctor he saw over the course of the eight years that there was no known cause

9    of his pain.  Id.  Plaintiff alleges that in February 2009 he discovered a medical report stating

10   surgical clips were used during his appendectomy.  Id.  Plaintiff alleges that the surgical clips

11   may be the cause of his pain and suffering.  Id.  With regard to defendant, plaintiff alleges that

12   because he was the surgeon who performed plaintiff's appendectomy, he was responsible for

13   informing him of the surgical clips, and for any postoperative care regarding the surgical clips.

14   Id. at 11.  Plaintiff alleges defendant was deliberately indifferent to his medical needs because he

15   failed to alleviate his pain and suffering.  Id.

16   III.  Facts

17        For the purpose of the instant motion for summary judgment, the court finds the following

18   facts undisputed, except as otherwise noted.

19   1.  Plaintiff is a state prisoner in the custody of the California Department of Corrections and

20       Rehabilitation ("CDCR"), and is incarcerated at California State Prison-Solano.  Statement of

21       Undisputed Facts ("SUF") ¶ 1 (ECF No. 69-2).

22   2.  The incident at issue here took place in August 2000, while plaintiff was incarcerated at

23       Folsom State Prison ("FSP").  SUF ¶ 2.

24   3.  In August 2000, defendant was employed by the surgical department of Doctors Hospital of

25       Manteca, and occasionally performed medical treatments for the CDCR.  SUF ¶ 3.

26   4.  On August 7, 2000, plaintiff was transferred from FSP to Doctors Hospital of Manteca where

27   ////

28   ////

1    he was admitted for care by Dr. Antonio Coiron who diagnosed him with acute appendicitis.[2]

2    SUF ¶¶ 4-6.

3    5.  On August 8, 2000, defendant assumed plaintiff's medical treatment, taking over for Dr.

4    Coiron, and confirmed plaintiff's diagnosis of acute appendicitis.  SUF ¶ 7-8.

5    6.  On August 8, 2000, defendant discussed the risks and complications of the appendectomy

6    with plaintiff and plaintiff agreed to proceed with the surgery.[3]  SUF ¶ 9.

7    7.  On August 8, 2000, defendant performed an appendectomy on plaintiff following standard

8    procedures.  The procedure was completed without complications, and the sponge, needle,

9    and instrument counts were correct.  SUF ¶ 10.

10   8.  Plaintiff was discharged from Doctors Hospital of Manteca on August 14, 2000, with

11   instructions to take medication for five days and to refrain from heavy lifting or vigorous

12   activities for two weeks.  SUF ¶ 11.

13   9.  Defendant was responsible for plaintiff's medical needs between August 8 and August 9,

14   2000.  Defendant had no contact with plaintiff following the August 8, 2000, appendectomy,

15   and was not responsible for his postoperative care and treatment.[4]  SUF ¶ 12, 20.

16   10. The appendectomy performed by defendant was routine, met the standard of care requested of

17   general surgeons in 2000, and there were no acts or omissions out of the ordinary for this type

18   of procedure.[5]  SUF ¶¶ 13-14.

19

20   [2]  Dr. Coiron is not a named defendant in this action.

21   [3]  Plaintiff disputes whether defendant discussed the use of surgical clips and potential
complications that might arise from the procedure.  ECF No. 84 at 3.  For the purpose of this
22   motion for summary judgment, the court will assume defendant did not discuss the use of surgical
clips with plaintiff.
23

24   [4]  Plaintiff disputes this fact; plaintiff contends defendant was responsible for plaintiff's
postoperative care.  ECF No. 84 at 4.
25

26   [5]  Plaintiff also takes issue with these facts, taking the position that he does not have any medical
expertise to rely on to dispute these facts.  ECF No. 84 at 6.  Plaintiff also takes issue with the
27   statement that there were no acts or omissions by defendant that were out of the ordinary due to
his lack of postoperative care.  Id.
28

1   11. Surgical clips are commonly used in appendectomies, and it is standard practice to leave them

2      in place during the procedure.[6]  SUF ¶¶ 15-16.

3   12. Plaintiff has not been told by a physician that the surgical clips are causing his abdominal

4      pain.  SUF ¶ 17.

5   13. Plaintiff was evaluated fourteen times by approximately six physicians between March 2008

6      and January 2010.  All of plaintiff's examinations yielded similar results: the cause of his

7      abdominal pain was unknown and no doctor stated it was related to the surgical clips.[7]  SUF

8      ¶¶ 21-22.

9   14. Defendant did not refuse to treat plaintiff on August 8, 2000, nor did he delay plaintiff's

10      necessary treatment.[8]  SUF ¶¶ 25-26.

11   IV.  Legal Standards for Summary Judgment

12        Summary judgment is appropriate when it is demonstrated that the standard set forth in

13   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

14   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

15   judgment as a matter of law."  Fed. R. Civ. P. 56(a).[9]

16                    Under summary judgment practice, the moving party always bears
                     the initial responsibility of informing the district court of the basis
17                    for its motion, and identifying those portions of "the pleadings,
                     depositions, answers to interrogatories, and admissions on file,
18                    together with the affidavits, if any," which it believes demonstrate
                     the absence of a genuine issue of material fact.
19

20   [6]  Plaintiff does not dispute that defendant submitted declarations in support of these facts.
    Plaintiff disputes whether this is common practice because he has not had to opportunity to
21   investigate these claims.  ECF No. 84 at 5.

22   [7]  A detailed summary of plaintiff's medical care was provided in this court's recent findings and
    recommendations addressing defendant Hsieh's motion for summary judgment.  See ECF No. 75
23   at 3-7.  In the findings and recommendations the court notes that plaintiff was seen by numerous
24   doctors and no doctor stated the surgical clips were the cause of his abdominal pain.  Id. at 12.

25   [8]  Plaintiff disputes this fact to the extent it purports to state defendant never refused to give
    plaintiff postoperative treatment.  ECF No. 84 at 7.
26

27   [9]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
    However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28   standard for granting summary judgment remains unchanged."

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

2  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

3  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

4  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

5  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

6  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

7  burden of production may rely on a showing that a party who does have the trial burden cannot

8  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

9  should be entered, after adequate time for discovery and upon motion, against a party who fails to

10  make a showing sufficient to establish the existence of an element essential to that party's case,

11  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

12  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

13  necessarily renders all other facts immaterial."  Id. at 323.

14      Consequently, if the moving party meets its initial responsibility, the burden then shifts to

15  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

16  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

17  establish the existence of such a factual dispute, the opposing party may not rely upon the

18  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

19  form of affidavits, and/or admissible discovery material in support of its contention that such a

20  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

21  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

22  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

23  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

24  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

25  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

26  (9th Cir. 1987).

27      In the endeavor to establish the existence of a factual dispute, the opposing party need not

28  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5

1  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

2  trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

3  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

4  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

5  amendments).

6        In resolving a summary judgment motion, the court examines the pleadings, depositions,

7  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

8  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

9  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

10  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

11  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

12  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

13  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

14  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

15  some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not

16  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

17  Matsushita, 475 U.S. at 586 (citation omitted).

18        By notice issued January 30, 2013, plaintiff was advised of the requirements for opposing

19  a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

20  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

21  Cir. 1988).

22  V.  Discussion

23  A.  Eighth Amendment Deliberate Indifference Standard

24        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

25  must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091,

26  1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The two prong test

27  for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

28  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

6

1    or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need

2    was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050,

3    1059 (9th Cir. 1992)). Deliberate indifference is shown by "a purposeful act or failure to respond

4    to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439

5    F.3d at 1096 (citing McGuckin, 974 F.2d at 1060.) In order to state a claim for violation of the

6    Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named

7    defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer v.

8    Brennan, 511 U.S. 825, 837 (1994).

9        In applying this standard, the Ninth Circuit has held that before it can be said that a

10   prisoner's civil rights have been abridged, "the indifference to his medical needs must be

11   substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

12   cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing

13   Estelle, 429 U.S. at 105-06.) A complaint that a physician has been negligent in diagnosing or

14   treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

15   Amendment. Even gross negligence is insufficient to establish deliberate indifference to serious

16   medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A difference of

17   opinion between medical professionals concerning the appropriate course of treatment generally

18   does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d

19   1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a

20   difference of opinion between a prisoner-patient and prison medical authorities regarding

21   treatment does not give rise to a[§ ]1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th

22   Cir. 1981).

23   B. Analysis

24       Plaintiff argues that defendant was deliberately indifferent to his medical needs because of

25   his use of surgical clips during his appendectomy, and because he failed to conduct any

26   postoperative care of plaintiff. On the other hand, defendant argues that the use of surgical clips

27   during an appendectomy is standard procedure, and defendant was not responsible for plaintiff's

28   ////

7

1    postoperative care.  The court finds summary judgment should be granted in favor of defendant.[10]

2           With regard to the use of the surgical clips, defendant provided the declaration of expert

3    witness Dr. Gregg Adams.  ECF No. 69-3.  Dr. Adams found that defendant met the standard of

4    care for a surgeon performing an appendectomy.  Adams Decl. ¶ 9.  Dr. Adams further states that

5    "[t]he use of surgical clips during an appendectomy were common at the time of the surgery and

6    that practice is still prevalent today[,]" and "[i]t is standard practice to leave the surgical clips in

7    place."  Id. ¶ 11.  Plaintiff did not provide any evidence to counter defendant's expert, other than

8    to state that "the surgical clips left in plaintiff's body may be the proximate cause of the years of

9    injury plaintiff has suffered."[11]  ECF No. 83 at 2.  However, even if plaintiff were to argue that

10   the use of surgical clips was not a standard medical practice, this allegation would merely amount

11   to either a difference of opinion or an allegation of medical malpractice or negligence.  These

12   arguments would still fail to establish an Eighth Amendment claim.  Sanchez, 891 F.2d at 242

13   (prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate

14   indifference); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (to establish that a

15   difference of opinion amounted to deliberate indifference, a plaintiff must show that defendant's

16   course of treatment was medically unacceptable and in conscious disregard of an excessive risk to

17   plaintiff's health); Toguchi, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard.

18   A showing of medical malpractice or negligence is insufficient to establish a constitutional

19   deprivation under the Eighth Amendment.").

20          With regard to plaintiff's allegations that defendant was deliberately indifferent to his

21   medical needs by failing to conduct any postoperative care, the court finds these allegations are

22   not supported by the record.  As noted above, "a prison official cannot be found liable under the

23   Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate

24   health or safety; the official must both be aware of facts from which the inference could be drawn

25   ----
     [10] Because the court concludes that plaintiff fails to raise a triable issue of fact regarding whether
26   defendant violated his Eighth Amendment rights, the court will not address defendant's
     alternative argument regarding a state medical malpractice claim.

27
     [11] Plaintiff also notes that he did not have the ability to investigate these claims.  ECF No. 84 at
28   5.

1   that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511

2   U.S. at 837. "In other words, a plaintiff must show that the official was (a) subjectively aware of

3   the serious medical need and (b) failed adequately to respond." <u>Simmons v. Navajo County,</u>

4   <u>Ariz.</u>, 609 F.3d 1011, 1017-18 (9th Cir. 2010) (internal quotation and citation omitted). Here,

5   plaintiff has produced no evidence showing that defendant knew of his alleged abdominal pain

6   following his appendectomy on August 8, 2000. Without being subjectively aware of plaintiff's

7   alleged serious medical need, defendant cannot be found liable for deliberate indifference under

8   the Eighth Amendment. <u>Farmer</u>, 511 U.S. at 837.

9         Therefore, the court finds that plaintiff has failed to establish a material dispute of fact as

10   to whether defendant was deliberately indifferent to his serious medical needs in violation of his

11   Eighth Amendment rights.

12   VI.   <u>Conclusion</u>

13         Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary

14   judgment (ECF No. 69) be granted, and the Clerk's Office be directed to close this case.

15         These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties. Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

20   objections shall be filed and served within fourteen days after service of the objections. The

21   parties are advised that failure to file objections within the specified time may waive the right to

22   appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

23   Dated: July 29, 2013

24

25   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

26

27   Jaur2283.msj.kjn

28